## DALLAS TRUST & SAVINGS BANK et al. v. BRASHEAR.

### No. 1404—6036.

Commission of Appeals of Texas, Section B.

Nov. 28, 1933.

R. L. Stennis and Lee G. Carter, both of Dallas, for plaintiff in error.

Nathaniel Jacks, McCormick, Bromberg, Leftwich & Carrington, Martin B. Winfrey, D. A. Frank, and Bartlett, Brown & Thornton, all of Dallas, for defendant in error.

McBride, O'Donnell & Hamilton, of Dallas, for plaintiffs in error.

W. A. Morrison, W. A. Morrison, Jr., and E. A. Wallace, all of Cameron, for defendant in error.

RYAN, Judge.

J. C. Brashear borrowed $3,000 from the Dallas Trust & Savings Bank, at the rate of 9 per cent. interest per annum, secured by lien on certain real estate in Milam county. He and his wife executed, as "mortgagor," to the bank, as "mortgagee," a conveyance in trust of said real estate, dated May 17, 1921, for the better securing of four certain promissory notes of even date therewith, thereinafter called "bond"—three notes for the sum of $200 each, due respectively on May 1, 1923, May 1, 1924, and May 1, 1925, and one note for the sum of $2,400 due May 1, 1931. Said notes bear interest from date until maturity at the rate of 7 per centum per annum, payable annually on the 1st day of May in each year, and after maturity at the rate of 10 per centum per annum, as well on unpaid matured interest installments, as on principal.

Included in each of said notes is the obligation to pay an attorney's fee of 10 per cent. on principal and interest then due, if said note be placed in the hands of an attorney for collection "under the provisions of the mortgage securing the same."

The "mortgage" securing said notes provides, as one of its conditions, that on failure to pay said notes with the interest thereon as the same becomes due and payable, "the said principal sum hereby secured, and all interest thereon to the date of payment thereof, shall at the option of the holder be and become immediately due and payable," and may be collected by sale under the mortgage or by suit in the courts of Dallas county, or otherwise, as the mortgagee may elect. If sold, as under deed of trust, the proceeds of sale should be applied, after payment of expenses of sale, including a commission to the party making the sale, to the payment of said notes together with all interest thereon, after which the surplus, if any, to the mortgagor, his heirs or assigns, less any taxes, assessments, insurance, or other payments made for or on account of the mortgagor, with interest.

This part of the transaction will, for convenience, be referred to as obligation No. 1.

Representing the remaining 2 per centum interest agreed to be paid by Brashear, he and his wife, on May 17, 1921, executed their second mortgage to the Dallas Trust & Savings Bank as "mortgagee," conveying, in trust, the same premises described above in obligation No. 1, to secure payment of five promissory notes as follows: Note No. 1 for $102.67, due May 1, 1922; note No. 2 for $102.66, due May 1, 1923; note No. 3 for $102.67, due May 1, 1924; note No. 4 for $102.66, due May 1, 1925; and note No. 5 for $102.67, due May 1, 1926 (aggregating $513.33); each of said notes bear interest after maturity at the rate of 10 per centum per annum, and provide for an attorney's fee of 10 per centum, if placed in the hands of an attorney for collection after maturity or after the same is declared to be

due under the provisions of the mortgage securing same, or for collection through the probate court. Each of said notes also contains the following recital: "This note is given for a part of the interest on a loan made to the undersigned by said Dallas Trust & Savings Bank of $3000.00 due on the first day of May, A. D. 1931, and is secured by second mortgage on real estate in Milam County, Texas."

Said second mortgage recites: "This mortgage is made subject to said first mortgage to the said mortgagee securing four notes for $3000.00 payable to said mortgagee." Also that said notes secured thereby are "for a part of the interest on a loan of $3000.00 secured by said first mortgage."

It was also provided in said second mortgage that if the indebtedness secured by the first mortgage and the notes secured by the second mortgage be paid according to their face, tenor, and effect, the lien should be released at the cost of the mortgagor, but if default be made in the payment of any of the notes above described, or of the "bond" or any of them secured by the first mortgage aforesaid, or if default should be made in compliance with any of the terms or conditions of said first mortgage, which are hereby adopted and made a part of this instrument, or if any option of prepayment provided for in said first mortgage is exercised, then the whole sum of money hereby secured shall become due and payable, at the election of the holder thereof without notice of said election to the mortgagor; and the mortgagor hereby fully authorizes' and empowers the said mortgagee or other legal holder of said notes, or their attorney or agent appointed in writing, and acting at their request, at any time after default or failure, as aforesaid, to sell said land on the first Tuesday in some month, between the hours of 10 a. m. and 4 o'clock p. m. to the highest bidder for cash, at the courthouse door of Milam county, after giving notice, by posting written notices, now required by law in making sales under deed of trust. And after said sale, aforesaid, the said mortgagee, or other legal holder of said notes, or their attorney or agent acting for them, shall make, execute, and deliver to the purchaser or purchasers of said premises a good and sufficient deed or deeds in law to the property so sold, in fee simple, and any statement or recital of facts in such deed shall be prima facie evidence of the truth of such statement or recital, and shall receive the proceeds of said sale, to be applied as follows: First, to the cost and expenses of making said sale, including a reasonable compensation to said mortgagee, or other legal holder of said notes, their attorney or agent, for services; second, to the payment and satisfaction of said notes, and any other indebtedness hereby secured; third, to the payment and satisfaction of the "bond" secured by the

above-mentioned first mortgage, or of any taxes, insurance, or other sums due under the terms of said first mortgage, according to the conditions thereof; fourth, the balance, if any, to be paid to the mortgagor or to the heirs, assigns or legal representatives of the mortgagor.

This part of the transaction will, for convenience, be referred to as obligation No. 2.

On September 9, 1922, Brashear paid to Dallas Trust & Savings Bank the sum of $314.10 representing interest on the $3,000 principal loan for the first year, and comprised 7 per cent. interest provided in obligation No. 1, plus note No. 1 for $102.67 of obligation No. 2, with interest on such amounts from May 1, 1922 (their due dates), to September 9, 1922 (date of payment).

On July 14, 1921, the Dallas Trust & Savings Bank assigned (without recourse on it) obligation No. 1 to the Connecticut General Life Insurance Company of Hartford, Conn., for which the assignee paid full value.

The Connecticut Company received its interest on obligation No. 1 out of the above referred to payment of $314.10 made on September 9, 1922, from the date said obligation was sold to it; the Dallas Trust & Savings Bank received the interest theretofore accrued from date of the obligation.

About May 1, 1924, Brashear paid $847, all received by the Connecticut Company and representing principal notes Nos. 1 and 2, each for $200, of obligation No. 1, and interest for the second and third years at 7 per cent. per annum on $3,000, principal, thus leaving outstanding, of obligation No. 1, on principal, only note No. 3 for $200, due May 1, 1925, and note No. 4 for $2,400, due May 1, 1931.

By instrument dated January 10, 1924, the Dallas Trust & Savings Bank, for full value and without recourse on it, assigned to the United States Bond & Mortgage Company the four unpaid notes of obligation No. 2, the lien securing the same and all claims under said second mortgage. On January 23, 1924, said assignee, United States Bond & Mortgage Company, sued Brashear and wife in the district court of Dallas county, for a recovery on said notes and foreclosure of the lien securing same, having declared them due under the acceleration of maturity provision of the mortgage securing them, and on March 13, 1924, obtained judgment by default for the sum of $467.07, principal, interest, and attorney's fees, together with foreclosure of lien on the mortgaged property, subject, however, to the first lien against it securing three said notes above described for $200 each, and one for $2,400, aggregating $3,000. An order of sale issued by virtue of said judgment; the property was levied on and advertised for sale, to prevent which Brashear on May 2, 1924, paid to the sheriff of Milam

county the sum of $473.16, judgment and interest, plus $37.62 costs, aggregating $510.80, which was applied accordingly, in payment of the four notes of obligation No. 2, interest thereon and attorney's fees.

On June 23, 1924, Brashear brought this suit against the Dallas Trust & Savings Bank, United States Bond & Mortgage Company, and Connecticut General Life Insurance Company, to recover double the amount of alleged usury claimed to have been paid to them upon the loan agreement with the Dallas Trust & Savings Company, dated May 17, 1921, alleged to be usurious in its incipiency. He also sought to cancel all future interest accruing on the loan contract, to cancel the mortgage in so far as it secured future interest, and to enjoin holders of all the principal loan notes from declaring their option to mature them for failure to pay annual installments of future interest.

The defendants jointly answered by general demurrer, certain special exceptions, general denial, and special plea that the judgment in United States Bond & Mortgage Company v. Brashear and wife, is res judicata of all issues involved in this suit.

The trial court overruled the general demurrer and special exceptions and rendered judgment against the defendants in the sum of $2,390.38, being double the sum of $1,195.19 allegedly collected as usurious interest, apportioned as follows: Against Dallas Trust & Savings Company for $627.80, which is a few cents less than double the amount collected as interest for the first year of the loan contract; against United States Bond & Mortgage Company for $864.58, which is double the sum of $434.29 collected as interest on its judgment and foreclosure proceedings; and against the Connecticut General Life Insurance Company for $894, which is double the $447 paid as interest to it on May 1, 1924.

The other relief prayed for by plaintiff was denied. Defendants appealed, and plaintiff filed cross-assignments of error.

The Court of Civil Appeals reversed that portion of the trial court's judgment against the United States Bond & Mortgage Company, rendered same in its favor, and affirmed in all other respects. 39 S.W.(2d) 148. The case is before the Supreme Court on writs of error granted to all the parties.

### Opinion.

■ First. The contract is usurious under the holdings of our Supreme Court, in Parks v. Lubbock, 92 Tex. 635, 51 S. W. 322; Shropshire v. Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 84 A. L. R. 1269; Deming Inv. Co. v. Giddens, 120 Tex. 9, 30 S.W.(2d) 287; Bothwell v. Farmers' & Merchants' State Bank, 120 Tex. 1, 30 S.W.(2d) 289, 76 A. L. R. 1480. The contracts in this

and in the Shropshire Case are practically identical and the material facts are similar in both cases.

The claim of the Connecticut General Life Insurance Company, that obligation No. 1 was transferred to it before maturity and without notice of the usury tainting the contract and therefore it should recover as an innocent holder, must be disallowed. This precise contention was made in Gilder v. Hearne, 79 Tex. 120, 14 S. W. 1031; the court there held that where the statute declares a usurious contract void, it gathers no vitality by its circulation and is void in the hands of an innocent holder.

Article 4980, Rev. Stat. 1911 (now article 5071, Rev. Stat. 1925), in effect when this transaction was made, declared all written contracts directly or indirectly stipulating for a greater rate of interest than 10 per centum per annum to be void and of no effect for the amount or value of the interest. The present statute declares void all contracts for usury and defines usury as interest in excess of the amount allowed by law. Article 5069, Rev. Stat. 1925.

Gilder v. Hearne is referred to with approval in Maloney v. Eaheart, 81 Tex. 281, 16 S. W. 1030; State Bank v. Holland, 103 Tex. 266, 126 S. W. 564; and Washer v. Smyer, 109 Tex. 398, 211 S. W. 985, 4 A. L. R. 1320.

Second. The judgment in favor of the United States Bond & Mortgage Company for the four notes of obligation No. 2 is foreclosive of the defense of usury as to said notes. That suit was for a recovery upon the remaining four interest notes executed in connection with the original loan contract. If that contract be usurious, a complete defense to any recovery in said suit would have been a properly supported plea of usury; the notes there sued on represented interest on the original loan and were, if given in usury, void and uncollectible. This was a complete defense available to Brashear, and he cannot now, in another proceeding such as this, reopen the question, and retry the issue he had an opportunity to then try.

As correctly held by the Court of Civil Appeals, that judgment is res judicata of the issue so far as the United States Bond & Mortgage Company is concerned. The debtor having failed to set up his defense of usury at the proper time, he will not be permitted to reopen the judgment indirectly by an action to recover usury paid.

The rule is thus stated in Freeman v. McAninch, 87 Tex. 132, 27 S. W. 97, 100, 47 Am. St. Rep. 79: "'A party cannot relitigate matters which he might have interposed, but failed to do, in a prior action between the same parties, or their privies, in reference to the same subject-matter.' And if one of the parties failed to introduce matters for the consideration of the court that he might have done, he will be presumed to have waived his right to do so."

In Chandler v. Young (Tex. Civ. App.) 216 S. W. 484, it was held that usury being a defense which is required to be specially pleaded, such issue cannot be raised for the first time in a suit to set aside a judgment, and that the issue as to the amount due and the right to foreclose a mortgage lien is res judicata of a subsequent proceeding.

In Bomar v. Smith (Tex. Civ. App.) 195 S. W. 964, 977, it was said that if a judgment is suffered and taken in a hostile suit in which the defense of usury was either overruled or not interposed, such judgment is conclusive and cannot ordinarily be attacked in a subsequent proceeding, on the ground that the contract upon which the judgment was rendered was tainted with usury.

In Henry v. Sansom, 2 Tex. Civ. App. 150, 21 S. W. 69, 72, the court said: "Where * * * usurious interest has been collected by virtue of a legal proceeding in which the defense of usury might have been, but was not, urged, it must be deemed to have been forever placed beyond the pale of litigation. The judgment is conclusive against a subsequent plea of usury."

We are cited to Long v. Moore, 59 Tex. Civ. App. 579, 126 S. W. 345, as supporting a contrary doctrine. In that case, Long sued on a note clearly usurious and recovered judgment by default, which the defendant Moore subsequently paid and then brought suit to recover not only the penalty but certain payments for which credit was not given in fixing the amount of the judgment. The Court of Civil Appeals found that the facts and circumstances under which Moore acted were sufficient to excuse his neglect in availing himself of the uncredited payments and as to the usurious interest he had the alternative of either filing a cross-action or an independent suit, but as the penalty statute applied only to usurious interest actually paid, he had no right to recover same until after its payment, whether voluntarily made or in satisfaction of the judgment of a court of competent jurisdiction; in other words, the effect of such holding is that a debtor might suffer judgment against himself, pay such judgment, then reopen and retry the question of usury and recover the penalty.

We are not impressed with the result or the court's reasoning in that case; it seems to us contrary to the authorities above cited and the well-recognized rules of law on the subject.

The same learned judge who disposed of Long v. Moore, wrote the opinion in Bomar v. Smith, supra, directly in conflict with the former on the question of effect to be given a judgment. We prefer his reasoning in the latter case.

The Court of Civil Appeals in the instant case correctly reversed the trial court's judgment against the United States Bond & Mortgage Company and correctly rendered judgment for it.

■ Third. As to the Dallas Trust & Savings Bank, the two obligations evidenced a single transaction, and said company collected, and Brashear paid, interest for the first year amounting to 7 per cent. on $3,000, or $210, plus $102.67 (interest note No. 1 of obligation No. 2), total $312.67, exclusive of the compounded interest on such total, from the due date thereof (May 1, 1922) to date of payment (September 9, 1922); this was clearly in excess of 10 per cent. per annum, and usurious as to the Dallas Trust & Savings Bank. Brashear did pay to, and said bank collected, a sum greater than the original debt would produce at 10 per cent. per annum for the use of the money during the time that payment represented, and the bank became liable for the statutory penalty. Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 84 A. L. R. 1269.

■ Fourth. The transaction being usurious, it follows that interest on the principal notes for $200 and $2,400, respectively, is not collectible, and Brashear's complaint of the refusal of the Court of Civil Appeals to disturb the judgment of the trial court denying his prayer and the lien in so far as given to secure the unpaid interest on said two principal notes, should have been sustained.

As the case stands, the right to demand interest on the balance due of principal is denied by statute because of usury, and the creditor's claim is limited to collection of only such principal.

In Spann v. Sterns' Adm'rs, 18 Tex. 556, a case similar to this, it was contended that the complainant should first offer to do equity by paying or tendering the payment of what, by her own showing, she honestly owes. In that case usury was involved and an injunction sought. The court held that the old chancery rule requiring tender of principal and legal interest thereon did not prevail under the Texas laws, and all that was necessary was to offer to pay the principal when due.

So here, liability for the principal, admittedly due at a future date, is not denied and no relief is sought against its payment.

In Rosetti v. Lozano, 96 Tex. 57, 70 S. W. 204, which involved the collection of the penalty of double interest, the court held that the right of recovery thereof would arise before the entire principal and usurious interest has been paid; in Yonack v. Emery (Tex. Com. App.) 13 S.W.(2d) 667, 70 A. L. R. 684, the court held that the right to recover, by an action of debt, twice the amount of the usurious interest, is fixed by the payment and appropriation of the usurious interest, whether the principal has been paid or not.

In the instant case, the right to recover, as a penalty, double the paid usurious interest, is settled; as to usurious interest contracted to be paid but not paid, the obligation is void as to the interest, and being void, the debtor should be relieved against it, and the cloud on the title to his property, existing by virtue of the usurious contract, should be removed to the extent of the usury, but no further.

We recommend, for the reasons stated: (1) That the judgments of the district court against the Dallas Trust & Savings Company, and the Connecticut General Life Insurance Company, be affirmed; (2) that the judgment of the district court against the United States Bond & Mortgage Company be reversed and judgment here rendered denying any recovery against it; (3) that the claim for interest contracted to be paid but not paid on said above-described principal notes for $200 and $2,400 be canceled, and the lien securing same be removed as a cloud on his title to the extent of such interest claim, but no further.

CURETON, Chief Justice.

The judgments of the Court of Civil Appeals and of the district court are in part affirmed and in part reversed and rendered, as recommended by the Commission of Appeals.